UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**JOHNNY MASSEY**                                          **CASE NO. 3:19-CV-01573**

**VERSUS**                                                        **JUDGE DOUGHTY**

**D I S A GLOBAL SOLUTIONS INC ET AL**     **MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Sanctions filed by DISA Global Solutions, Inc., and Dynasty Energy Services, LLC ("Defendants"). [doc. # 45]. The motion is opposed. [doc. # 49]. For reasons detailed below, it is recommended that the motion be GRANTED as follows: (1) Plaintiff's counsel should be ORDERED to pay $2,500 as partial reimbursement for the unnecessary telephone deposition taken of Plaintiff on April 22, 2020 and for the delays and waste of judicial resources caused by plaintiff's counsel's failure to timely prepare for the hearing on this Motion, and (2) Plaintiff's remaining claims should be DISMISSED WITH PREJUDICE.[1]

## Background

Plaintiff Johnnie Massey ("Plaintiff," "Massey," or "Mr. Massey") filed his Original Petition for Injunctive Relief and Protective Order on November 5, 2019 in the 4th Judicial District Court for the Parish of Ouachita, Louisiana against several defendants, including Dynasty Energy Services, LLC ("Dynasty") and DISA Global Solutions, Inc. ("DISA"). [doc. #

---

[1] While ordinarily, the undersigned would simply rule on a motion for sanctions, because the relief requested herein includes dismissal of the case, out of an abundance of caution, the ruling has been converted to a report and recommendation.

1-1, pp. 5-11].[2] Therein, Massey alleged that he "is a resident of Monroe, Louisiana." [doc. # 1-1, p. 5, ¶ 2]. Plaintiff filed a Motion for Leave to file an Amended Petition on January 17, 2020, alleging again in the proposed amended complaint that he "is a resident of Monroe, Louisiana." [doc. # 21-3]. The Court denied the motion. [doc. # 47]. Attached as Exhibit 3 to both the Original and proposed Amended Petitions is a letter that Massey allegedly wrote to DISA with a return address of 1911 Hwy 583, Rayville, Louisiana, 71267. [doc. # 1-1, pp. 20-23; doc. # 21-6, pp. 1-3, 11-12].[3]

On December 10, 2019, Defendants removed this suit to federal court under 28 U.S.C. § 1332, alleging that the Court had jurisdiction because the only allegedly non-diverse defendant, Dynasty, a Louisiana limited liability company, was improperly joined in the action to destroy the Court's diversity jurisdiction. [doc. # 1]. Massey filed a motion to remand on December 18, 2019, and an amended motion to remand on December 20. [docs. ## 6, 8]. In the first motion, Massey stated that "[d]iversity of citizenship is lacking in this case because both Plaintiff, Johnnie Massey[,] and his former employer, Dynasty, are citizens of Louisiana." [doc. # 6, p. 15]. In his amended motion, Massey stated that "[t]he parties to this matter are not completely diverse . . . Dynasty is a citizen of Louisiana . . . [t]he same state of residency as the Plaintiff." [doc. #8-1, p. 3]

---

[2] This case arises from a positive drug test that resulted in the termination of Plaintiff. Dynasty employed him on an at-will basis as a Fishing Supervisor. Dynasty is a drug-free workplace and uses DISA Global Solutions, Inc. to conduct its drug testing and interpret the results. Plaintiff claims that the results were in error, and his inclusion in DISA's database has prevented him from being able to find another job.

[3] The correct zip code for Rayville, Louisiana is 71269, not 71267, but Massey listed 71267 on the letter to DISA.

DISA filed a response to the motion on January 10, 2020 and Massey replied on January 17, 2020. [docs. ## 18, 20]. In his Reply, Massey stated that "[a]t the time of removal, no diversity jurisdiction existed[;] Dynasty has the same state of residency as the Plaintiff[,] as Dynasty is a Louisiana limited liability company with its principal place of business in Lafayette, Louisiana," and argued that Dynasty's Louisiana citizenship should not be disregarded for purposes of assessing diversity jurisdiction [doc. # 20, pp. 6-7].

The original jurisdictional allegations were inadequate, having failed to set out the citizenship or domicile (as opposed to residence) of the plaintiff, or the citizenship or domicile of each of the members of the defendant LLP, and the undersigned issued an order granting the Defendants seven days in which to file an updated notice of removal that properly established diversity jurisdiction. [doc. # 39]. On March 16, 2020, Defendants filed an updated notice of removal correcting the other deficient allegations but stating that Massey was **either** a citizen of Oklahoma or of Louisiana. [doc. # 40].

Because the jurisdictional allegations were still inadequate (a person can have only one citizenship or domicile which must be specifically alleged), on March 31, 2020, the Court gave Defendants thirty days to conduct jurisdictional discovery to clarify Massey's citizenship. [doc. # 41]. In accordance with the Court's Order, on March 31, 2020 counsel for DISA emailed Plaintiff's counsel, Ms. Carter, written discovery for the purpose of determining Massey's citizenship, and attached a Declaration of citizenship for him to sign. [doc. # 45-4]. Counsel for DISA noted that they wanted to avoid a deposition and requested that Ms. Carter let them know as soon as possible if Massey would affirmatively state his place of citizenship for purposes of jurisdiction so they could meet the Court's requirements. [doc. #45-4].

Ms. Carter did not respond, so DISA's counsel sent her a follow-up email on April 1, 2020, attaching a Notice of Plaintiff's deposition. [doc. # 45-5]. In that email, DISA's counsel again noted that they would like to avoid a deposition but needed Massey to sign the Declaration and/or complete the written discovery DISA had served. [doc. # 45-5]. Ms. Carter replied on April 1, 2020 objecting to DISA's proposed deposition date; she did not acknowledge or otherwise indicate an intent to answer the written discovery served by Defendants. [docs. ## 45-6, 45-7].

Although Ms. Carter never responded to Defendants' written discovery requests, the evidence produced at the hearing on this matter showed that she did send a request for the address information contained in the Defendants' discovery to Mr. Massey, by email, on April 6, 2020 [doc. #82, p. 103-105]. Mr. Massey responded to her email with all the requested information regarding his addresses during the relevant periods. Notably, his response showed that neither his present nor any of his former addresses were in Rayville or Monroe, Louisiana. [doc. # 82, p. 102-103]. Ms. Carter never sent Massey's written discovery responses to the Defendants, so Defendants took Massey's deposition on April 22, 2020. [doc. # 45-9].

During his deposition, Massey testified that he has never lived in or anywhere near Monroe or Rayville, Louisiana, and that he owns no property and pays no taxes in Louisiana. [doc. # 45-9, at 10:25-11:16, 13:1-19, 15:15-20, 20]. Massey further testified that he considered Oklahoma to be his permanent address; Oklahoma is where he has a driver's license and his only registered vehicle, and where he has received his mail and has been registered to vote for the last two to three years. [doc. # 45-9, at 5:24-6:21, 8:5-9:1, 9:18-20, 11:17-25, 12:1-11, 13:1-19, 14:12-15:14, 20:21-25].

4

On April 29, 2020, Plaintiff filed a motion to withdraw his motion to remand, which was granted on April 30, 2020. [docs. ## 42, 43]. On April 30, 2020, Defendants filed an updated notice of removal establishing Oklahoma as Plaintiff's domicile, as Mr. Massey's testimony had indicated that, contrary to all his prior representations to the Court, he was not domiciled in Louisiana at the time he filed this lawsuit, and in fact had never lived in or near Monroe Louisiana. [doc. # 44]. On the same day, Defendants filed the instant motion. [doc. # 45].

The Court held an evidentiary hearing on June 26, 2020 but continued same in order to allow Ms. Carter to obtain separate counsel to represent her. [doc. # 58].[4] The hearing was conducted virtually[5] and a subpoena had been issued prior to the hearing, directing Mr. Massey to appear at a court reporter's office in Tulsa so that he would have technical support during the hearing, and requiring him to provide various documents. [doc. # 54-3, p.6]. Ms. Carter moved to quash the subpoena, but this motion was denied prior to the hearing. [docs. # 54, 55]. Instead of relaying the instructions in the subpoena, Ms. Carter told Mr. Massey that he could attend the hearing from his home instead of from the court reporter's office where the proper video equipment and the hard copies of the documents the defense counsel already had, and which she intended to use during the hearing, were located. [doc. # 68, pp. 11- 14]. As a result, Mr. Massey did not have any of the documents he had been ordered to produce, and did not have access to the relevant documents which the defense had sent to Tulsa during the hearing, and had technical difficulties that greatly impeded the progress of the hearing. [doc. # 68, pp. 11-15].

---

[4] At the June 26 hearing, this Court warned Ms. Carter that she would have to bear the cost of continuing the hearing since she should have obtained counsel prior to the June sanctions hearing instead of coming unprepared and causing unnecessary expense in continuing the hearing. [doc. # 68, p. 104-107].

[5] The hearing was conducted in part via Zoom, a brand of video teleconferencing software.

5

At the June 26 hearing, Massey testified that the address he had provided in Rayville, Louisiana was the address of his cousin, Jennifer Cardin, and her husband. [docs. ## 68, pp. 40-41; 45-9]. Massey testified that he had at one time lived with his cousin and her husband for a couple of weeks while he looked for a place to live. [doc. #68, pp. 40-41] However, contrary to his testimony, Jennifer Cardin and her husband, whose depositions were taken on September 3, 2020, both testified that Massey has never even visited them in Rayville, much less stayed overnight at that address or anywhere in the area. [docs. # 96-5; 96-6].

The remainder of the evidentiary hearing was held via videoconference on September 10, 2020. [doc. # 93]. On that date, Mr. Massey admitted that he had not lived in Louisiana at any time relevant to the lawsuit, and testified that he used his cousin's Rayville address because either Ms. Carter or her assistant told him he needed a Louisiana address in order for Ms. Carter to be able to take his case. Ms. Carter denied making such a statement, and said she relied solely on Mr. Massey's representation in his client intake form for her belief that he resided at 1911 Hwy 583 Rayville, Louisiana, when the suit was filed. At the hearing, Defendants offered into evidence several key documents that were in Ms. Carter's possession at all relevant times during this litigation:

1. On his client intake questionnaire dated October 18, 2019, Mr. Massey listed his home address as 1911 Hwy 583 Rayville, Louisiana 71269. [doc. # 82, p. 30]. However, on the same form, he indicated that he was working in Colorado when he had to submit to the drug test. [doc. # 82, p. 32].
2. The two money orders that Mr. Massey used to pay Ms. Carter's law firm had Mr. Massey's address listed as 2902 Bent Avenue, Cheyenne, Wyoming. [doc. # 96-1].

3. The December 4, 2019 email from Ms. Carter's paralegal to Mr. Massey's long-term, Oklahoma-based treating physician, Dr. Blakeburn, containing a draft affidavit of Dr. Blakeburn, indicates that Mr. Massey was living in Wyoming when he failed the drug test that is the subject of this litigation. [doc. # 96-4].

4. The medical records Mr. Massey sent to Ms. Carter on October 18, 2019 were all from Cheyenne Regional Medical Center in Wyoming. [doc. # 82, pp. 49-73].

5. On October 21, 2019, Mr. Massey emailed Ms. Carter the medical record of the colonoscopy he had just a few days before he failed the drug test, and the colonoscopy was done in Wyoming. [doc. # 82, pp. 74-75].

Finally, at the hearing, Ms. Carter testified that it did not arouse her suspicion when Mr. Massey could not attend the December 10, 2019 hearing in state court on his request for an injunction because he couldn't afford to travel to the courthouse in Monroe, despite her belief that Mr. Massey lived just 20 miles away, in Rayville. [doc. # 68, pp. 73-74]; *see also* [doc. # 82, p. 84].

The only exhibit Ms. Carter offered at the hearing was an affidavit executed by Mr. Massey on May 26, 2020, stating that he was unclear or misled Ms. Carter about his residency and the fact that he was not currently domiciled at the Rayville, Louisiana address. [doc. # 82, pp. 115-116].

No post hearing briefing was ordered. Accordingly, this matter is ripe.

## Law and Analysis

1. Sanctions against Ms. Carter

Federal Rule of Civil Procedure 37(b) authorizes a court to impose sanctions, including dismissing an action, if a party fails to comply with a court's order to "be sworn or to answer a question" or "provide or permit discovery." Fed. R. Civ. P. 37(b)(1)-(2). Under Rule 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified." Fed. R. Civ. P. 37(b)(2)(C).[6] Louisiana Rule of Professional Conduct 3.4 likewise prohibits a lawyer from "fail[ing] to make [a] reasonably diligent effort to comply with a legally proper discovery request by an opposing party." La. R.P.C. 3.4.

Furthermore, 28 U.S.C. § 1927 provides that "[a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under this section "are not to be awarded lightly" and "require 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 479 (5th Cir. 2012) (quoting *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir.1998)). *See also Morrison v. Walker*, 939 F.3d 633, 637–38 (5th Cir. 2019)(citing *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002))("[c]onduct is 'unreasonable and vexatious' if there is evidence of the 'persistent prosecution of a meritless claim' and of a 'reckless disregard of the duty owed to the court.'")

The United States Court of Appeals for the Fifth Circuit has held that an attorney acts with "reckless disregard" of her duty to the court when she advances a baseless claim without

---

[6] The court generally may act sua sponte in imposing sanctions under the Rules. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 n.8 (1991).

8

reasonable inquiry despite clear evidence undermining her factual contentions. *Morrison*, 939 F.3d at 637–38 (citations omitted). The Fifth Circuit further noted that "it [is] unreasonable for [an attorney] to rely on his client's dubious factual allegations when there were glaring red flags that [the attorney] needed to investigate further." *Id. See also, e.g., Gonzalez*, 689 F.3d at 479-80 (awarding § 1927 sanctions for an attorney's conduct in wording a letter for a client before filing a complaint to create a basis for otherwise meritless claims and altering a client's deposition testimony on an errata sheet so that answers matched allegations in the complaint); *Veranda Assocs., L.P. v. Hooper,* 496 F. App'x 455, 458 (5th Cir. 2012) (affirming district court's award of fees and costs to non-diverse landlord seeking remand where tenant lacked objectively reasonable basis for removing Texas–domiciled landlord's suit; although tenant offered evidence that he was registered to vote in New York at the time of suit, owned property there, maintained driver's and law licenses there, and maintained office there, tenant had purchased home in Texas several years before suit, with intent to live and raise children there, and tenant had long history of maintaining residences there, doing business there, and being party to lawsuits there).

Finally, federal courts have inherent authority, conferred neither by rule nor statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)(quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). This inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear*, 137 S. Ct. at 1186 (2017)(quoting *Chambers*, 501 U.S. at 44–45). One permissible sanction is an "assessment of attorney's fees" instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side. *Id.* (citing *Chambers*, 501 U.S. at 45).

Here, Ms. Carter violated Fed. R. Civ. P. 37(b) and Louisiana Rule of Professional Conduct 3.4 when she failed to comply with this court's order permitting discovery by not responding to the Defendants' March 31, 2020 written discovery requests. Her conduct cannot be blamed on her client because Mr. Massey provided the information needed to answer the Defendants' discovery in his April 8, 2020 email to Ms. Carter. This was precisely the information the Defendant had requested; if Ms. Carter had forwarded same, as defense counsel repeatedly stated, Mr. Massey's deposition could have been avoided. *See* [doc. # 96-2]. As defendants point out in their motion for sanctions, Ms. Carter's failure to forward the responses led to a totally unnecessary and avoidable waste of time and money. [doc. # 45-1, p. 11]. For the same reasons, Ms. Carter's failure to respond to the March 31, 2020 discovery has also multiplied this litigation in contravention of 28 U.S.C. § 1927.

Ms. Carter also acted in reckless disregard for her duty to the Court when she failed to recognize the need to enroll counsel to represent her prior to the June 26, 2020 hearing. It was not until the hearing was underway, with defense counsel having incurred the time and expense of traveling to Monroe, Louisiana, for same, that Ms. Carter decided that she could not represent herself because of a conflict of interest with her client. [doc. # 68, pp. 69-72]. Since the motion for sanctions had always been against both Ms. Carter and her client, and because of the likelihood of exactly the kind of conflict that occurred, Ms. Carter should have recognized the need for separate counsel.

Moreover, Ms. Carter acted in bad faith by telling her client to attend the June 26, 2020 hearing from his home computer rather than to obey the subpoena directing him to appear at the

10

court reporter's office in Tulsa.[7] Because he did not go to the court reporter's office, Mr. Massey did not have the proper audio or video equipment to be able to properly appear at the hearing, and did not have access to the documents defense counsel had provided to the court reporter for use at the hearing. Thus, her actions caused a waste of both the defendants' and the Court's time and resources. [doc. # 68, pp. 24-32].

In sum, Ms. Carter's reckless disregard for her duty to the Court in failing to come adequately prepared to the June 26th hearing, and her bad faith conduct in directing Mr. Massey to disobey a subpoena, have unreasonably and vexatiously multiplied the litigation in contravention of 28 U.S.C. § 1927 by unnecessarily lengthening the proceedings and necessitating that the hearing be continued. Furthermore, the Court has the inherent authority to sanction her conduct because of its impact on the judicial process itself.

Defendants seek costs and attorney's fees not only for the April 22, 2020 deposition and the continuation of the June 26, 2020 hearing, but also for all costs associated with filing the Motion for Sanctions, defending the Motion to Remand, and having to amend the Notices of Removal. [doc. # 45]. The undersigned declines to hold Ms. Carter responsible for the entirety. While it is true that, throughout this litigation, Ms. Carter simply disregarded the evidence in her possession which should have raised questions regarding Mr. Massey's whereabouts and probable domicile, and that she certainly should have noticed a glaring red flag when Mr. Massey claimed he couldn't get to his state court hearing in Monroe on December 10, 2019 because of the cost of travelling, when he was allegedly a resident of Rayville, just 20 miles away, at the time [doc. #

---

[7] Ms. Carter filed two different motions to quash the subpoena, but both motions to quash raised only issues of document production; neither motion raised the issue of having Mr. Massey appear at the court reporter's office in Tulsa. *See* [docs. # 54- 56]. Thus, there was never any basis for Ms. Carter to tell Mr. Massey not to appear at the court reporter's office in Tulsa.

11

68, pp. 73-74], she is not solely responsible for the problems created herein. The jurisdictional allegations made by the defendants themselves in their notice of removal were inadequate, as were the allegations in their amended notice. They also bear some responsibility for the delays, the number and length of the briefs, and the disordered state of the pleadings which led to the posture in which this case now stands.

Ms. Carter filed several documents with this Court, including a Motion to Remand, based entirely on Massey's alleged Monroe, Louisiana citizenship, without ever verifying that critical material fact.[8] This conduct was negligent, and it has multiplied the proceedings. However, Ms. Carter testified at the September 10, 2020 hearing that Mr. Massey told her he was basically homeless, a statement that he made himself during his testimony at the hearing, and pointed out that people who work in the oil and gas industry often move around from state to state for extended periods, following the work as needed. The Court recognizes that these factors might reasonably have prevented Ms. Carter from realizing her client's deception immediately, even with medical bills and checks arriving from out-of-state. Ms. Carter's failure to spot the red flags regarding Mr. Massey's citizenship was negligent and lacking in diligence but does not justify holding Ms. Carter responsible for all costs associated with her client's misrepresentation, such as amending the Notice of Removal and defending the Motion to Remand. Thus, the Court will award only part of Defendants' requested relief.

---

[8] The documents Ms. Carter filed with this Court asserting Monroe, Louisiana as Mr. Massey's place of citizenship are not even consistent with the incorrect information given to her by Mr. Massey; he gave an address in Rayville, Louisiana—not Monroe. Thus, her state court petition was filed in the 4th Judicial District Court, rather than the 5th, where a Rayville resident and domiciliary should have filed. She failed even to use the false information provided to her correctly.

In light of Ms. Carter's violations of Federal Rule of Civil Procedure 37(b), 28 U.S.C. § 1927, and Louisiana Rule of Professional Conduct 3.4, and also under the Court's inherent authority, the Court hereby admonishes Ms. Carter for her negligence in the handling of this case, and orders her to pay $2,500 to the defendants as partial reimbursement for the unnecessary costs and fees they incurred due to her conduct.

2. Sanctions against Mr. Massey

The court has the inherent authority to "impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct." *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008) (citing *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)); *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir.1993); *In re Thalheim*, 853 F.2d 383, 389 (5th Cir.1988)); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980).

Dismissal with prejudice is warranted where "a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008). *See also Webb v. Claimetrics Mgmt., LLC*, 412 F. App'x 107, 109 (10th Cir. 2011) (plaintiff's false representation that he was citizen of Hawaii, for purposes of establishing diversity jurisdiction, warranted sanction of dismissal of his case with prejudice). The Fifth Circuit has affirmed dismissals with prejudice when it has found at least one of the following aggravating factors: (1) the plaintiff caused the delay; (2) actual prejudice to the defendant; or (3) the delay was caused by intentional conduct. *Millan*, 546 F.3d at 326.

Here, Mr. Massey intentionally misled the Court and about his address and citizenship, and the record shows a clear pattern of dilatory and dishonest conduct. Contrary to his assertions in his original Petition [doc. #1-1], his Original and Amended Motions for Remand [doc. # 6, p. 5, 15; doc. # 8-1, p. 3], and his Reply to DISA's Opposition to Remand [doc. # 20], Mr. Massey now admits that, at all relevant times in this lawsuit, he was and is a citizen of and domiciled in Oklahoma. He was not domiciled in Louisiana at any time relevant to this lawsuit, and in fact, it is doubtful, even for the brief time he lived near Lafayette Louisiana while he was working in the area—which occurred years before this lawsuit was filed—that he was ever a Louisiana citizen. Plaintiff currently lives in Afton, Oklahoma, and has had an Oklahoma driver's license and been registered to vote in Oklahoma for several years. [doc. # 45-9, at 5:24-6:21, 8:5-9:1, 9:18-20, 11:17-25]. Prior to living in Afton, Oklahoma—and at the time he filed this lawsuit in November 2019—Massey was living in Cheyenne, Wyoming. [doc. # 45-9, at 12:12-25, 19:10-12]. For the last few years, Plaintiff has received his mail at his daughter's residence in Claremore, Oklahoma, which he considers his "permanent address." [doc. # 45-9, at 12:1-11, 14:12-15:14]. Massey's only vehicle is registered in Oklahoma and he intends to pay Oklahoma state income taxes for 2019. [doc. # 45-9, at 20:21-25].

Massey owns no property in Louisiana, last paid income taxes in Louisiana "[m]ore than five years ago," and never lived anywhere in Louisiana besides Broussard/Lafayette five or more years ago. [doc. # 45-9, at 10:25-11:16, 20:1-3]. Massey has never lived in Rayville or Monroe, Louisiana or anywhere in northern Louisiana. [doc. # 45-9, at 13:1-19]. Massey testified that he has never lived in Rayville, Louisiana, and specifically, that he has never lived at 1911 Hwy 583 in Rayville, Louisiana: the return address on the letter he allegedly sent to DISA on

14

November 1, 2019 requesting a change to his positive drug test result, attached to his Original Petition as Exhibit 3. [doc. # 45-9, at 15:15-20; see also doc. 1-1, pp. 20-23].

Massey testified under oath at the June 26, 2020 hearing that he had lived with his cousin and her husband for a couple of weeks at 1911 Hwy 583 in Rayville, Louisiana while he looked for a place to live. [doc. #68, p. 41]. He claimed to believe that this was sufficient to support a Louisiana domicile for purposes of this lawsuit. However, the depositions of Mr. Massey's cousin and her husband were taken on September 3, 2020, and both testified that Massey has never even visited them in Rayville, much less stayed overnight at that address or moved there with the intention of remaining. [docs. ## 96-5; 96-6]. They testified that Massey called them and asked if he could use their address in connection with a lawsuit he was filing in Louisiana. After they were subpoenaed to give their depositions, Massey apologized for causing them trouble, and told them that he understood that they would not lie for him. He also admitted that their testimony was true, and that he had previously lied to the Court about living in Rayville.

Contrary to Mr. Massey's assertion at the September 10, 2020 hearing that Ms. Carter told him he needed a Louisiana address for her to be able to take his case, Ms. Carter pointed out that she would have been able to take the case no matter where the plaintiff lived, and file it in federal court in Lafayette, where one of the defendants was domiciled, and therefore would have no reason to tell Mr. Massey that he needed a Louisiana address in order for her to represent him. Throughout this litigation, Mr. Massey has repeatedly made misrepresentations to the Court, both orally and in writing, about his address and his citizenship. Specifically, while under oath; he stated at the June 26, 2020 hearing that he had temporarily lived with his cousins in Rayville while looking for work. [doc. #68, pp. 40-41]. That statement is in contradiction with his deposition testimony on April 22, 2020 (stating he had never lived at the address in Rayville),

15

with the deposition testimony of his cousin and her husband, and with his own testimony when confronted with the deposition testimony contradicting his earlier claims. *See* [docs. ## 45-9; 96-5; 96-6].

Mr. Massey's intentional misrepresentations to the Court about his citizenship have delayed these proceedings, have caused them to be unnecessarily costly, and have caused actual prejudice to the Defendants, who have spent significant time and money in defending a meritless motion to remand and conducting discovery to determine Mr. Massey's citizenship. In addition, Mr. Massey has been very clear that he lacks the necessary income or assets with which to pay any type of fine. Finally, it should be noted that, at the September 10, 2020 hearing, Mr.Massey expressed a desire to dismiss his remaining claims. Accordingly, given his clear record of delay or contumacious conduct, and the fact that no lesser sanction is available that would serve the interests of justice, Mr. Massey's conduct warrants the sanction of dismissal with prejudice of his remaining claims.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' Motion for Sanctions [doc. # 45] be **GRANTED as Follows: (1)** Plaintiff's counsel should be **ORDERED** to pay $2,500 to defendants as partial reimbursement for the unnecessary telephone deposition and for the needless delays in the hearing on the Motion for Sanctions, and **(2)** Plaintiff's remaining claims should be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. The District Judge will consider timely objections before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

THUS DONE in Chambers on this 25th day of September, 2020.

_____
KAREN L. HAYES
United States Magistrate Judge